# IN THE UNITED DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **PAMELA M. UTLEY** <br> 6085 Arlyne Lane <br> Medina, OH 44256 <br> On behalf of herself and all those <br> similarly situated <br><br> And <br><br> **ANDREA UTLEY** <br> 6085 Arlyne Lane <br> Medina, OH 44256 <br> On behalf of herself and all those <br> similarly situated <br><br> And <br><br> **ALEXANDRA C. SCHROCK** <br> 6020 Arlyne Lane <br> Medina, OH 44256 <br> On behalf of herself and all those <br> similarly situated <br><br>     Plaintiffs, <br><br>   v. <br><br> **UNITED AIRLINES HOLDINGS,** <br> **INC. AND UNITED AIRLINES, INC.** <br> 233 South Wacker Drive <br> Chicago, IL 60606 <br><br> <u>Also Serve – Statutory Agent</u> <br> **CT CORP**. <br> 1300 E. 9th Street <br> Cleveland, OH 44114 <br><br>     Defendant. | CASE NO.: <br><br> JUDGE: <br><br><br> **PLAINTIFFS' CLASS ACTION COMPLAINT** <br><br><br><br> **JURY DEMAND ENDORSED HEREON** |

Now come Plaintiffs, Pamela M. Utley ("" "Utley"), Andrea Utley ("AU") and Alexandra

C. Schrock ("Schrock") (also referred to herein at times collectively as ("Plaintiffs"), by and

through their undersigned counsel, for their Class Action Complaint against Defendants United Airlines Holdings, Inc. and United Airlines, Inc. (collectively referred to hereinafter as "United" or "Defendant") for breach of contract, and as grounds therefore allege as follows:

## THE PARTIES

1. This is a claim for breach of contract and monetary relief for damages exceeding $5,000,000.00 exclusive of all interest, costs, and attorney's fees. Plaintiffs also seek injunctive relief.

2. Plaintiff Utley is an Ohio resident. During the Class Period, Plaintiff Utley purchased airfare directly from United for travel within the United State of America and internationally, including airfare for travel between Ohio and Paris, France. Plaintiff Utley was injured as a result of the allegations alleged herein.

3. Plaintiff AU is an Ohio resident. During the Class Period, Plaintiff AU purchased airfare directly from United for travel within the United States of America and internationally, including airfare for travel between Ohio and Paris, France. Plaintiff AU was injured as a result of the allegations herein.

4. Plaintiff Schrock is an Ohio resident. During the Class Period, Plaintiff Schrock purchased airfare directly from United for travel within the United States of America and internationally, including airfare for travel between Ohio and Paris, France. Plaintiff Schrock was injured as a result of the allegations alleged herein.

5. Defendant, United, is a Delaware corporation with its principal place of business located at 233 South Wacker Drive Chicago, Illinois 60606. United is one of the largest commercial airlines in the world and conducts air passenger services throughout the United States of America, including flights to and from this District.

6. At all material times and during the acts alleged herein, Defendant United acted by and through its officers, agents, and employees including, and whose acts and conduct alleged herein were known to, authorized, and ratified by Defendant United.

## JURISDICTION AND VENUE

7. As a result of regularly conducting business, promoting and/or selling, either directly or indirectly through third parties or related entities to consumers throughout the State of Ohio, Defendant obtained the benefits of the laws of Ohio

8. This Court has subject matter jurisdiction over the claims alleged herein pursuant to 28 U.S.C. § 1332(d)(2), because there are at least 100 Class Members in the proposed Class and/or sub-classes, the combined claims of the proposed Class Members, upon information and belief, exceeds $5,000,000.00, exclusive of interests and costs, and this is a class action in which certain of the Class Members and Defendants are citizens of different states.

9. Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391, because Defendant conducts business throughout this District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims took place within this District.

## FACTUAL BACKGROUND

10. On or about January 6, 2020 Plaintiffs Utley, AU and Schrock purchased airline tickets from United under Confirmation Number EMR4TP.

11. Plaintiffs were scheduled to depart Cleveland, Ohio on Sunday May 3, 2020 and arrive in Paris, France on May 4, 2020. In between, Plaintiffs had scheduled layover stops in Toronto, Canada.

12. Plaintiffs were scheduled to return on May 16, 2020, departing from Dublin, Ireland and arriving in Cleveland, Ohio.

13. The total amount paid by Plaintiffs was $12,343.34.

14. United has cancelled and/or effectively cancelled and/or caused Plaintiffs and Class Members to incur such significant delays regarding their contracted flights that United must provide Plaintiffs and Class Members with full and immediate refunds for the unused portion(s) of their respective flight tickets, but United refuses to offer and/or provide said full and immediate refunds.

15. COVID-19 is a world-wide pandemic.

16. On January 31, 2020, under §319 of the Public Health Service Act (42 U.S.C.247d), The Secretary of Health and Human Services ("HHS") declared a public health emergency in response to COVID-19.

17. On March 11, 2020, the World Health Organization ("WHO") announced that COVID-19 outbreak represented a pandemic.

18. On March 13, 2020 the President of the United States of America, Donald J. Trump, issued the *Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak ("Proclamation")*, proclaiming the COVID-19 outbreak constituted a national emergency in the United States, beginning March 1, 2020 .[1]

19. Various states, including the State of Ohio have issued and implemented mandatory Stay-At-Home Orders.[2] They are:

---

[1] See:https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/

[2] Upon information and belief, all but nine (9) states have ordered and are currently under mandatory stay-at-home orders.

- Alabama, effective April 3, 2020

- Alaska, effective March 28, 2020

- Arizona, effective March 31, 2020

- California, effective March 19, 2020

- Colorado, effective March 26, 2020

- Connecticut, effective March 23, 2020

- Delaware, effective March 24, 2020

- District of Columbia, effective March 30, 2020

- Florida, effective April 3, 2020

- Georgia, effective April 3, 2020

- Hawaii, effective March 25, 2020

- Idaho, effective March 25, 2020

- Illinois, effective March 21, 2020

- Indiana, effective March 24, 2020

- Kansas, effective March 30, 2020

- Kentucky, effective March 26, 2020

- Louisiana, effective March 23, 2020

- Maine, effective April 2, 2020

- Maryland, effective March 30, 2020

- Massachusetts, effective March 24, 2020

- Michigan, effective March 24, 2020

- Minnesota, effective March 27, 2020

- Mississippi, effective April 3, 2020

- Missouri, effective April 3, 2020

- Montana, effective March 28, 2020

- Nevada, effective April 1, 2020

- New Hampshire, effective March 27, 2020

- New Jersey, effective March 21, 2020

- New Mexico, effective March 24, 2020

- New York, effective March 22, 2020

- North Carolina, effective March 30, 2020

- Ohio, effective, March 23, 2020

- Oklahoma, effective March 24, 2020

- Oregon, effective March 23, 2020

- Pennsylvania, effective April 1, 2020

- Rhode Island, effective March 28, 2020

- Tennessee, effective April 2, 2020

- Texas, effective April 2, 2020

- Virginia, effective March 30, 2020

- Vermont, effective March 25, 2020

- Washington, effective March 23, 2020

- West Virginia, effective March 24, 2020

- Wisconsin, effective March 25, 2020

20. On March 29, 2020 President Donald J. Trump announced the extension of his Administration's social distancing guidelines until April 30, 2020.

21. On March 31, 2020 the United States Department of State issued a Global Level 4 Health Advisory to not travel.[3]

22. Upon information and belief, all the states listed above have only extended their respective Stay-At-Home Orders; none have been lifted.

23. On April 3, 2020, the United States Department of Transportation ("DOT") issued an *Enforcement Notice Regarding Refunds By Carriers Given The Unprecedented Impact Of The COVID-19 Public Health Emergency On Air Travel* ("Notice") advising airlines, including United, to issue prompt refunds to customers whose flights are/were canceled or changed significantly by the airline during the COVID-19 crisis.[4] The Notice states, in part, as follows:

> *"The Department is receiving an increasing number of complaints and inquiries from ticketed passengers, including many with non-refundable tickets, who describe having been denied refunds for flights that were cancelled or significantly delayed. In many of these cases, the passengers stated that the carrier informed them that they would receive vouchers or credits for future travel. But many airlines are dramatically reducing their travel schedules in the wake of the COVID-19 public health emergency. As a result, passengers are left with cancelled or significantly delayed flights and vouchers and credits for future travel that are not readily usable.*
>
> *Carriers have a longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier. The longstanding obligation of carriers to provide refunds for flights that carriers cancel or significantly delay does not cease when the flight disruptions are outside the carrier's control (e.g. a result of government restrictions). The focus is not whether the flight disruptions are within or outside the carrier's control, but rather on the fact that the cancellation is through no fault of the passenger.*

---

[3] See: https://travel.state.gov/content/travel/en/traveladvisories/ea/travel-advisory-alert-global-level-4-health-advisory-issue.html
[4] See Notice at:
https://www.transportation.gov/sites/dot.gov/files/202004/Enforcement%20Notice%20Final%20April%203%202020_0.pdf .

7

24.     United's Contract of Carriage[5] provides, in relevant part, that:

*"This Contract of Carriage is subject to applicable laws, regulations, rules, and security directives imposed by governmental agencies, including but not limited to those imposed during or as a result of a national emergency, war, civil unrest or terrorist activities. In the event of a conflict between the Rules contained herein and such government laws, regulations, rules, security directives and their corresponding effects on UA's operation, the latter shall prevail."*[6]

*"Unless specifically stated otherwise herein or where any limitation would expressly violate any applicable law, UA shall not be liable for any consequential, compensatory, indirect, incidental or punitive damages arising out of or in connection with the performance of its obligations under these rules."*[7]

25.     Any attempt by United to invoke the *Force Majeure* provision of the Contract of Carriage and/or any similar provision that United uses, has used, or attempts to use to avoid a full and immediate refund to Plaintiffs and the Class Members directly conflicts with the DOT's Notice to promptly provide customers full refunds as a result of the COVID-19 public health emergency and, therefore, is void *ab initio* and/or otherwise unenforceable against the Plaintiffs and Class Members.

26.     Plaintiffs and the Class Members have fully complied with their obligations under the Contract of Carriage, but the various national and state guidelines, laws, rules and regulations, etc. have made it impossible for the Plaintiffs and Class Members to use their airline tickets to travel to their intended destinations.

27.     Moreover, the various national and state guidelines, laws, rules and regulations, etc. have frustrated Plaintiffs' and Class Members' ability to benefit from the Contract of Carriage and ability to travel, thus making domestic and/or foreign air travel impracticable.

---

[5] See United's Contract of Carriage at: https://www.united.com/ual/en/us/fly/contract-of-carriage.html#tcm:76-6593
[6] Contract of Carriage - Rule 3 Application of Contract at ¶ B.
[7] Contract of carriage – Rule 3 Application of Contract at ¶ I.

28. Moreover, United has engaged in an intentional scheme to confuse customers related to its refund policy – which so far has not resulted in the required immediate refunds,

29. Initially, Pre-Pandemic, if United changed a flight time by more than two hours, passengers were entitled to a full refund.

30. However, on March 7, 2020, the same day the WHO reported in excess of 100,000 COVID-19 cases in 94 countries, United altered its policy to require a flight time change of at least 25 hours to receive a refund.

31. Thereafter, on March 10, 2020, United instituted a policy offering refunds only if "departure or arrival time significantly changes."

32. Next, on March 14, 2020 United instituted its current policy of providing credits – not refunds – until one year passes from the original date of purchase, at which time a refund "may" be issued.

33. United is refusing and/or failing to provide required full and immediate refunds to Plaintiffs and Class Members and required under the Contract of Carriage.

## CLASS ACTION ALLEGATIONS

34. Plaintiffs hereby restate the allegations and averments contained in the preceding paragraphs of this Complaint, as if fully rewritten herein, and further state as follows:

35. Plaintiffs bring this action both on behalf of themselves, and as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), on behalf of the following class (the "Class"):

> "**All persons and entities who purchased airline tickets from United or its affiliates between January 1, 2020 to the present and whose flights were cancelled either voluntarily, or involuntarily by United, due to the inability to travel domestically, internationally, or both as a result of the COVID-19 pandemic, and who sought and/or are owed a refund.**

36. Excluded from the Class are United's employees, officers, directors, legal representatives, successors, and assigns; any entity in which United has a controlling interest; any Judge to whom the litigation is assigned; all members of the Judge's family; and all persons who timely and validly request exclusion from the Class. Plaintiffs reserve the right to modify the Class Definition throughout the course of this litigation to conform with the evidence and facts as they develop.

37. This action has been brought as a class action, and may properly be maintained, pursuant to Rule 23(B)(1), (2) and (3) of the Federal Rules of Civil Procedure and case law thereunder.

38. *Numerosity*: Plaintiffs do not know the exact number of the Members of the Class because such information is in the exclusive control of Defendant. Due to the nature of the trade and commerce involved, however, Plaintiffs believe that Class Members number at least in the many thousands and possibly millions and are sufficiently numerous and geographically dispersed throughout the United States of America so that joinder of all Class Members is impracticable.

39. *Typicality*: The Plaintiffs' claims are typical of the Class Members' claims. Like other Class Members, Plaintiffs are customers of United who purchased airline tickets that were either voluntarily or involuntarily cancelled by United due to the COVID-19 pandemic National Health Crisis. United treated Plaintiffs consistently with other Class Members with regard to the wrongful and illegal policy of refusing an immediate refund. United's imprudent, unfair, wrongful, illegal and unjustified bad faith decisions affected all Plaintiffs and Class Members similarly.

40. *Adequacy*: Plaintiffs will fairly and adequately protect the interests of the Class.

Plaintiffs' interests are aligned with the Class that they seek to represent, and Plaintiffs have retained counsel experienced in complex class action litigation and who has previously been appointed lead and/or co-lead class action counsel in several previous class action matters. Plaintiffs do not have any conflicts of interest with any Class Members that would impair or impede their ability to fully and adequately represent such Class Members.

41. *Commonality*: Common questions of law and fact exist as to all Class Members and predominate over any questions solely affecting individual Class Members, including but not limited to:

   a. Whether United owes Plaintiffs and the Class Members a full and immediate refund;

   b. Whether United failed to comply with DOT regulations and guidelines related to COVID-19, as it voluntarily expressed that it would in the Contract of Carriage;

   c. Whether United breached its contract with Plaintiffs and the Class Members;

   d. Whether United breached the implied duty of good faith and fair dealing, thus damaging Plaintiffs and Class Members;

   e. Whether, and to what extent, the conduct of Defendant caused injury to Plaintiffs and Members of the Class, and, if so, the appropriate measure of damages.

   f. Whether Plaintiffs and Class Members are entitled to injunctive and/or equitable relief as a result of Defendants' wrongful conduct;

   g. The proper form of equitable and injunctive relief;

42. Class certification is appropriate under Ohio Civ. R. Proc. 23(b)(1)(A) because prosecuting separate actions against Defendant would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible

standards of conduct for Defendant.

43. Class certification is also appropriate under Ohio Civ. R. Proc. 23(b)(1)(B) because adjudications with respect to individual Class Members, as a practical matter, would be dispositive of the interests of the other persons not parties to the individual adjudications or would substantially impair or impeded their ability to protect their interests.

44. Class certification is also appropriate under Ohio Civ. R. Proc. 23(b)(2), because separate and distinct from the damages caused by Defendants' wrongful conduct, final injunctive and declaratory class-wide relief is also appropriate because Defendants have acted or refused to act on grounds generally applicable to the Class.

45. Class certification is also appropriate under Ohio Civ. R. Proc. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct as described in this Complaint applies uniformly to all Members of the Class. Class Members do not have an interest in pursuing separate actions against Defendant, as the amount of each Class Members' individual claim is relatively small compared to the expense and burden of individual prosecution, and Plaintiffs are unaware of any similar claims brought against Defendants by any Class Members on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interest of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class Members' claims in a single forum.

46. Further, and in the alternative, Fed. R. Civ. Proc. 23(c)(4) permits an action to be maintained as a class action with respect to only particular issues, and the common questions of law and fact set forth above raise issues which are appropriate for class treatment pursuant to Fed. R. Civ. Proc. 23(c)(4).

## COUNT ONE
## COMMON LAW BREACH OF CONTRACT

47. Plaintiffs hereby restate the allegations and averments contained in the preceding paragraphs of this Complaint, as if fully rewritten herein, and further states as follows:

48. Plaintiffs and Class Members, and United, entered into a Contract of Carriage for air travel.

49. United has an affirmative obligation and duty to perform its contractual obligations.

50. Plaintiffs and Class Members complied with all terms and conditions precedent under the terms and conditions of the subject contract and, therefore, were and are entitled to all benefits contracted for under the terms and conditions of the contract.

51. By no fault of their own, Plaintiffs and the Class Members cannot use the airline tickets purchased by them from United, due to the various federal and state governmental laws, guidelines, rules and regulations, etc., thus resulting in both forced cancellations by United and/or voluntary cancellations by Plaintiffs and the Class Members whose travel became impossible, impracticable and/or otherwise frustrated.

52. Plaintiffs and the Class Members have lost the benefit of their bargain.

53. On April 3, 2020 the DOT issued its Notice to all airlines, including United, wherein it advised that Plaintiffs and Class Members subject to travel cancellations or significantly

delayed flights must promptly be provided full refunds by United; and that credits and/or vouchers that United was providing and/or attempting to provide Plaintiffs and Class Members in lieu of a full and prompt refund violated carriers' "longstanding obligations to provide prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier."

54. Plaintiffs and Class Members have chosen not to accept United's alternative offerings and demand a full and immediate refund of their ticket costs.

55. The United Contract of Carriage specifically provides that:

*"This Contract of Carriage is subject to applicable laws, regulations, rules, and security directives imposed by governmental agencies, including but not limited to those imposed during or as a result of a national emergency, war, civil unrest or terrorist activities. In the event of a conflict between the Rules contained herein and such government laws, regulations, rules, security directives and their corresponding effects on UA's operation, the latter shall prevail."*[8]

56. United's contractual language providing that governmental laws, regulations, rules, etc. that conflict with its own Rules, "*shall prevail*," is a self-imposed undertaking by United grounded solely in the terms of the Contract of Carriage, which United is failing to comply with regarding the provision of full and immediate refunds related to the COVID-19 national public health emergency.

57. United has refused and/or failed to fully and immediately refund and/or offer immediate refunds to Plaintiffs and Class Members in accordance with both its Contract of Carriage and the DOT Notice, which expressly prevails over the terms and conditions set forth in United's Contract of Carriage, and which United is contractually obligated to comply with.

58. In addition, United has violated the implied duty of good faith and fair dealing.

---

[8] Contract of Carriage - Rule 3 Application of Contract at ¶ B.

Nonetheless, even absent the application of the implied covenant of good faith and fair dealing, United still violated the express terms of the Contract of Carriage.

59. Plaintiffs' and Class Members' breach of contract claim as asserted herein does not undermine the purpose of the Airline Deregulation Act ("ADA") to promote competition in the airline industry and, therefore, is not preempted.

60. As a direct and proximate cause of said breach, Plaintiffs and Class Members have incurred monetary and other damages in excess of Five-Million Dollars ($5,000,000.00), subject to escalation and to be more fully ascertained at trial.

### COUNT TWO
### (INJUNCTIVE RELIEF)

61. Plaintiffs incorporate by reference all of the foregoing allegations as if fully rewritten herein.

62. At the time of filing of Plaintiffs' Complaint, United is still misrepresenting and/or failing to disclose to its customers the true and accurate refund policy and requirement that full and immediate refunds must be offered and/or administered to Plaintiffs and Class Members.

63. Plaintiffs and the putative Class Members do not have a plain, speedy, and adequate remedy at law to stop or correct United's unlawful conduct.

64. United has acted or refused to act on grounds that apply generally to the Plaintiffs and the Class Members, as outlined in this herein Complaint, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

65. Accordingly, separate and apart from any damages awarded to Plaintiffs and the Class Members as a result of United's unlawful conduct, Plaintiffs seek an order requiring United to: (1) disclose the true refund policy related to COVID-19 that is consistent with the DOT Notice; (2) provide its customers with an offer of and/or full and immediate refund for the unused portion

15

of their airline tickets within the Class Period; (3) agree to pay all United Customers who had their flights cancelled, had to voluntarily cancel their flights, or had significant delays in their flight plans resulting in involuntary and/or voluntary cancellation an immediate and full refund of the costs of Plaintiffs' and Class Members' airline tickets within the Class Period.

**WHEREFORE,** Plaintiffs respectfully requests of this Court the following relief, on behalf of themselves and all others similarly situated:

a. An Order certifying the proposed Class herein pursuant to Rule 23(B)(1), (2), and (3) or, alternatively, 23(c)(4) of the Federal Rules of Civil Procedure and appointing Plaintiffs and their counsel of record to represent the Class;

b. An Order awarding Plaintiffs and Class Members damages resulting from Defendant's wrongful conduct;

c. Restitution and reimbursement of all moneys paid by Plaintiffs and Class Members because of Defendant's wrongful conduct;

d. An Order of Declaratory and injunctive relief pursuant to Fed. R. Civ Proc. 23(b)(2);

e. An award of any additional, compensatory, consequential, and incidental damages and costs suffered by Plaintiffs and Class Members because of Defendants' wrongful conduct;

f. Pre-judgment and post-judgment interest;

g. Plaintiff's costs of suit, including, without limitation, their attorney's fees, expert fees, and actual incurred and costs; and

h. Such other further relief, at law or in equity, as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Civil Rule 38, Plaintiff requests a jury trial of all issues alleged herein.

Respectfully submitted,

/s/ Thomas J. Connick
Thomas J. Connick (0070527)
CONNICK LAW, LLC
25550 Chagrin Blvd., Suite 101
Beachwood, OH 44122
PH: 216-364-0512 | FX: 216-609-3446
Email: tconnick@connicklawllc.com

*Attorney for Plaintiffs*

17